Good morning, honors. May it please call. My name is David Su, counsel for Petitioner. In this case, the issues are whether Petitioner has established resistance to the coercive population control program of China, and also whether Petitioner has established past prosecution on account of his resistance. In our brief, we argued that Petitioner has established them both. The government in its brief argued that Petitioner did not first establish resistance to the family planning policy because, first, his partial payment of the fine imposed upon him and his family for violation of the family planning policy did not demonstrate his motive or intent to resist the coercive family planning policy. But this court held in Lin v. Gonzalez that an asylum applicant is not to show motive for his resistance to the coercive family planning policy so long as he demonstrates physical or vocal resistance to the family planning officials while the officials were trying to enforce the program. Therefore, the petitioner here is not required to show motive. And secondly, the government's characterization of Petitioner as a willing payer of the fine is not supported by the evidence. Petitioner made the partial payment of the fine only after the family planning officials went to their home every day, threatening to demolish their home and threatening to disallow their children to go to school. So as wrote by Petitioner's wife in her letter, that they had no choice but to borrow money to make a partial payment of the fine. So how does payment or partial payment constitute resistance? It may have been unhappy payment, but it was payment. It's a failure to comply with the family planning policy. Well, it's a compliance. It's a payment of fine. They imposed a fine. The government imposed a fine because of the failure to comply. But how does that constitute resistance? If you go ahead and pay the fine, and I believe he testified if he had the money, he would have paid the rest of the fine. So how is that resistance? Yes, Your Honor. But he was forced to pay the fine. He was not willing. I accept that. A few people voluntarily pay fines. Get a traffic ticket, you have to pay a fine. But that doesn't constitute resistance. Where is the resistance here? Your Honor, I believe the resistance is the failure to pay the fine. But he did pay the fine. He paid it to the extent that he had the money. The full amount of the fine. That's because nobody, as Your Honor observed, nobody is willing to pay a fine. So the payment itself or the failure to pay the full amount of the fine, I believe, is the resistance in this case. I understand the resistance you've identified in your brief and your client testified to was the act of getting married and of fathering children and of resisting this payment. Yes. Is there any other form of resistance that he did not testify to but that he could testify to? I can't answer that. It's an odd question. Let me put it this way. Subsequent to the hearing before the immigration judge, the attorney general issued an opinion in JS, which we understand governs today. Does that affect the presentation that your client would have made to the immigration judge at all? I mean, it seems to me he stated his case. Is there anything else he has to say? I believe in this case because when the family planning officials went to their home to take his wife for a forced abortion sterilization, the petitioner was not at home. So there's no fact that will show he personally resisted the taking of his wife for the abortion. So in that sense, I don't think. Did you handle this case below? Yes, Your Honor. Did you know what the ultimate issue was going to be? What evidence you had to prove under the new attorney general's rule? Yes, I do. You knew even though he hadn't ruled? No, not that you know it now. No, at that time, no. At that time, we argued that once he established his wife was forced to undergo an abortion sterilization, he was eligible for asylum. That was the law. That was the law.  And then per se your client was eligible? Yes, Your Honor, at that time. At that time. So that's all you had to prove when you had a hearing? Yes, Your Honor. Now, what do you have to prove now under the new attorney general's rule? We have to prove that, first, there is a resistance or other resistance under the law to the coercive family planning policy by petitioner. Also, persecution on account of that resistance. That was the new law. We have to, under that law, we need to approve those points. And what did you try to prove in your first hearing? We tried to prove that the abortion and the sterilization was forced. That was our, you know, what we tried to do at that first hearing. Is there additional evidence you would put on now under the JS case if you had another hearing? Yes, Your Honor. We would investigate more about what the petitioner himself did, you know, before or after the forced abortion and sterilization. Because he was not present when the forced abortion and sterilization occurred. So you would investigate that further, but as you stand here today, are you aware of additional evidence that you would put on under the new standard if you had another hearing? Yes, Your Honor. The question was A or B. The answer can't be yes. Do you know of additional evidence now? No, Your Honor. So I take it you'd answer B, that is, you would try to investigate further to see if there were additional evidence. That's correct, Your Honor. Well, why don't you save your final minute and a half for rebuttal if you decide to give off a rebuttal.  Good morning, Your Honors. May it please the Court, Eric Anderson representing the Attorney General. Don't do you – would you be interested in conceding that he's entitled to a new hearing? No, Your Honor. It wasn't – it fortunately wasn't an Oyer question. A matter of jazz was decided before Petitioner filed his opening brief to the Board, and when he filed his brief to the Board, he argued that he established eligibility under the new standards. He did not ask for a remand at that time. Assuming Petitioner's credibility, he has established that he and his wife were fined after the birth of their second child. Is your argument, then, that he waived that by not raising it before the Board? Well, there would be a good chance – there would be a good opportunity to ask for a remand at that point. And what happens if he doesn't take that opportunity, then? If it's a manifestly unjust proceeding? Well, I'm not aware of the application of the manifest injustice standard. However, if there is to date no evidence showing that he would – that he would even be able to prevail under the new standard, I don't see that it could be a manifest injustice at this point in time. Where is he supposed to present that new evidence to the appellate court? No, Your Honor. There's a procedural vehicle, even at this date, to try to get new evidence before the Board in the form of a motion to reopen. It would be untimely by quite a long period of time. But he had an opportunity to ask for a remand in his brief to the Board. He did not do so. I don't know if it would be waiver or forfeiture or whether I would argue failure to exhaust. Well, do you have any argument that wherever it was that he was entitled to a new trial or a new hearing when the Attorney General changed the rules? The Attorney General announced that he was applying in all pending cases and announced that if there was some credible evidence of other resistance, that there might be an opportunity to remand for further proceedings. He said there might be an opportunity to remand? I think it was 2010, if I remember correctly. He talks about applying the rule in pending cases. So you mean when you say you apply the rule in pending cases, when you've given someone a hearing where you only have to prove A, and then you decide, no, he had to prove A and B, that that could be applied that way? In terms of when the Attorney General determined what the actual law was that applied, yes, Your Honor, that applied in all governing cases, that it was, there was no basis to extend asylum to individuals who solely established the abortion or forced sterilization on their wives. Yes, but that's not what the rule was when the hearing was held and when the IJ's decision was issued. Well, Your Honor, if you want to go back, it was also not the rule at the time Petitioner decided he was going to try to come to the United States. According to him, he's been trying to come since 1992. It wasn't until 1996 that it even became a basis for even the wife, the wife who experienced the abortion to make out a claim of asylum. I don't see how there's any retroactivity problems here in applying the actual law to Petitioner's case. The law when the hearing was held was that he only had to prove A. This Court had deferred to the Board's interpretation that that was the case, yes. Okay. And then later, he would have been granted asylum under the existing law until the Attorney General changed the law and said you have to prove A and B after he had his hearing. If his testimony was accepted as credible. At the time, it was not accepted as credible, so then he wouldn't have failed even under the law. The BIA said it was credible. It's assumed it's credible in its most recent decision. It has not found it's credible. All right. So let's not say it was not credible at the time. It's assumed to be credible. Yeah. Okay. I take it your answer is you couldn't say that, in fact, he'd established eligibility. The BIA never reached the credibility issue. That's correct, Your Honor. Petitioner has averted in his opening argument to the rule in Liebman-Linn that when there is actual resistance, an alien need not prove that there's something more than the actual resistance. He doesn't have to prove his motivation for resisting. But as Judge Clifton, I think, stated, or his questions raised the answer, which is that we have more than just non-active, an absence of active resistance here. We have active compliance with. Well, what about impregnating your wife in violation of the policy after you've already been told once? That's a violation. It's not resistance, Your Honor. It's not determination to carry on despite the policy and to, as you say, to not to comply with the policy isn't resistance? Well, it's a violation of the policy. I don't see that it's resistance, Your Honor. What's the difference between resisting the policy and violating the policy knowingly after you've been warned not to? Well, the resistance, the cases seem to establish two kinds of forms. There's expression of opposition, verbal or otherwise, and there are attempts to thwart or attempts to interfere with, perhaps physically opposing the officials who come to take your wife away. Suppose you announce you're going to resist the policy. That's resistance? Verbal opposition to a policy would be part, could be a resistance in a given case. We don't have it here, so I don't know. Well, I understood you said there were two types. One was verbal, saying I'm going to resist. Saying I'm opposed to China's policy of limiting couples to one birth. And the other is it's not saying I'm opposed, but I'm going to violate it. I'm not going to comply. It's undertaking actions to thwart or interfere with China's achieving its goals. And violating it and deliberately trying to thwart the policy by your conduct? It isn't resistance if you turn around and pay the fine, Your Honor. I'm not talking about the fine. I'm talking about getting your wife pregnant in violation of the policy. Although you've already been warned and fined that you have to comply with the policy. That's not resistance if you engage in the conduct. Yes. Okay. Well, I guess I understand the argument that you're better off if you just do it verbally. But if you do it by conduct, that's okay. That's not resistance. When Congress created a special class of individuals who could benefit from being persecuted under coercive family planning programs, they required resistance. I understand that. I was asking what resistance consisted of. And the Attorney General has noted that when applying what is resistance, if mere violation or enforcement of the policy is enough, then we're looking at hundreds of millions of people, potentially. He's really worried that we're going to be flooded? Mr. Gonzales is worried we're going to be flooded by hundreds of millions of Chinese? Did he say that? He noted that the reason why Congress tied it to other resistance, apart from individuals who themselves experienced the forced abortion or sterilization, the reason Congress tied it to failure to undergo the procedure, refusal to undergo the procedure, or other resistance, was that otherwise we would be flooded. Hundreds of millions of Chinese? That's what I said. Well, that's an interesting view on which to base the law. Okay. Thank you. You have 35 seconds. Your Honor, petitioner's testimony, if assumed to be credible, established that his wife would be a refugee in the United States, did not establish his own eligibility, and we would ask that the petition be denied. Thank you. And that, by the way, what you said, he tried to establish his wife's eligibility and did not try to establish what he needed to establish under the new policy. What he tried to establish was what he had to establish under the old policy, and he didn't try to establish what he had to establish under the new policy. All right. Thank you. Thank you. Thank you. Very good. Thank you.
judges: Dorsey, Reinhardt, Clifton